# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Matthew T. Haynes, a Special Agent with the Federal Bureau of Investigation, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since April 10, 2022. I received basic law enforcement training at the FBI Academy located in Quantico, Virginia. I am currently assigned to the FBI Louisville Division, Pikeville Resident Agency. Previously, I was assigned to the FBI New Orleans Division, Lake Charles Resident Agency. Prior to my assignment with the FBI, I worked as a certified law enforcement officer in West Virginia for approximately seven years. I have investigated and participated in investigations of federal criminal violations related to narcotics, firearms, violent crimes, thefts, bank robbery, violent gangs, child exploitation, and child pornography. I gained experience through participations these types of investigations. I have used evidence collected from digital devices in many investigations and am familiar with the evidence potential contained within such devices. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. § 2251, 2252, and 2252A, and I am authorized by law to request a search or arrest warrant.

2. This Affidavit is submitted in support of a Criminal Complaint for Charles M. Hopkins for violations of 18 U.S.C. § 2252(a)(4)(B) (Possession of child pornography).

3. The statements contained in this affidavit are based on, among other things, my own investigation; information provided by law enforcement; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; independent investigation and analysis by law enforcement agents; and my

1

experience, training and background as a Special Agent. Since this Affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe violations or attempted violations of 18 U.S.C. § 2252(a)(4)(B) (Possession of child pornography).

## DEFINITIONS

4. The following definitions may apply to this Affidavit:

   a. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

   b. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph (in whatever form, e.g., digital and printed photographs), film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct or the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

   c. "Child sexual abuse material" or "CSAM," as used herein, has the same meaning as the term "child pornography," defined above.

d. "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

e. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

f. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

g. "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

h. "Computer software," as used herein, is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

i. A provider of "Electronic Communication Service", as defined in 18 U.S.C. § 2510(15), is any service that provides to users thereof the ability to send or receive wire or electronic communications. For example, "telephone companies and electronic mail companies" generally act as providers of electronic communication services. See S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568.

j. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state. The internet is a means or facility of interstate or foreign commerce.

k. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

l. "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

4

 m. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

 n. A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

 o. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## PROBABLE CAUSE

5. In June 2025, detectives with the Kentucky State Police Electronic Crimes Branch received CyberTipline report 211573264 from the National Center for Missing and Exploited Children (NCMEC).[1] This report was submitted on behalf of Synchronoss Technologies which is a vendor used by Verizon to provide cloud storage to Verizon mobile customers. The report was submitted by Synchronoss on May 6, 2025, after the service identified that a video containing child pornography was uploaded to the account

---

[1] NCMEC's CyberTipline is the nation's centralized reporting system for the online exploitation of children. When images or messages are indicative of the potential abuse of children, NCMEC is notified by a company. NCMEC then generates a Cyber Tip which routes pertinent information, images, or messages to a corresponding member of a local ICAC task force in the vicinity of a subject which can, in turn, be used to obtain legal process for further investigating a subject and the alleged abuse of children.

associated to phone number 859-310-2964. Detectives reviewed the video and confirmed that it contained child pornography. Detectives described the content of the video as containing footage of a completely nude prepubescent male minor performing oral sex on a completely nude adult male.

6. A subpoena was issued for the IP address associated to the report. This subpoena identified the subscriber as Charles Hopkins and listed the same phone number, 859-310-2964, associated with the NCMEC report. In July 2025, investigators learned of 12 additional reports associated to Hopkins.

7. Detectives reviewed the images associated to the NCMEC reports and observed multiple pictures and videos which depicted sexual acts between prepubescent male/female minors and adults. Many of the images and videos showed the genitals of completely nude minors.

8. In July 2025, KSP obtained a search warrant for the records of the Synchronoss account associated to phone number 859-310-2964. The search warrant return identified that the account was linked to a Samsung SM-S928U Galaxy S24 Ultra Cell Phone. Detectives identified 38 files in the search warrant return believed to be CSAM. Additionally, detectives observed a photo of Hopkin's Kentucky Operators License in the return. A subpoena to Verizon indicated that the subscriber of the phone number 859-310-2964 was Charles Hopkins.

9. On October 28, 2025, Detectives obtained a search warrant for the residence of Charles Hopkins which they identified as 1196 Indian Creek Road, Virgie, Kentucky. This address was located in Pike County which is in the Eastern District of Kentucky. KSP executed a search warrant at the residence while Hopkins was present. Detectives seized

several electronic devices including the Samsung SM-S928U Galaxy S24 Ultra Cell Phone.

10. Detectives conducted a mirandized interview of Hopkins. During the interview Hopkins stated he was unaware of the service Synchronoss, but confirmed that he had a Samsung SM-S928U Galaxy S24 Ultra Cell Phone and that the phone number for the device was 859-310-2964. Hopkins denied possessing any images of child pornography. When asked if he ever looked at child pornography, Hopkins stated that he was chatting online with a male around his age who asked what Hopkins was into. Hopkins replied that he "had no limits." The unknown male sent Hopkins several files which Hopkins thought were "gay porn". When Hopkins opened the files, he discovered that the images were of child pornography.

11. Hopkins stated that he did not have the child pornography on his phone anymore after deleting the images in June 2025 and tried to get everything off the account. Hopkins admitted that he previously had saved some images on his electronic devices and that he obtained the child pornography from other men on the internet. He saved some images which included child pornography of infants. Hopkins stated that he was not attracted to the infants but liked the adults also depicted in the images. He sent child pornography to other men online as a means to start conversations and to be accepted. He never produced any of the child pornography and only obtained material via people using the internet.

12. Following the interview, Charles M. Hopkins was arrested by the Kentucky State Police and charged with the possession of over 20 images of child sexual abuse material (CSAM).

## CONCLUSION

**13.** Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated by Charles M. Hopkins.

Respectfully submitted,

*Matthew Haynes by EBA with permission*
Matthew T. Haynes
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 4th day of November, 2025.

Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge

Edward B. Atkins
UNITED STATES MAGISTRATE JUDGE

8